Filed 2/9/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>JOHN ALLEN DUCHINE,<br><br>        Defendant and Appellant. | A157980<br><br>(Contra Costa County<br>Super. Ct. No. 5-033309-6) |

Appellant John Allen Duchine was convicted of first degree murder in 1987 following a jury trial, and his conviction was affirmed by this court on appeal.  In 2019, he filed a petition for resentencing under Penal Code section 1170.95,[1] also known as Senate Bill 1437 (S.B. 1437), together with a declaration asserting he was charged and convicted of first degree murder under a felony murder theory, but that he did not, with intent to kill, aid, abet or assist the actual killer in the commission of murder, and that he could not be convicted of first degree murder under the newly reformed murder statutes (amended sections 188 or 189).  After appointing counsel for Duchine and reviewing briefs submitted by his counsel and the district attorney, the trial court denied the petition.

Duchine contends the trial court erred in two respects, first, by denying relief at the prima facie stage on the ground that there was substantial

---

[1]  Further section references are to the Penal Code.

1

evidence from which a reasonable trier of fact *could* reach a guilty verdict of first degree murder and second, by engaging in judicial fact-finding at the prima facie stage rather than holding an evidentiary hearing.

The Attorney General agrees with Duchine's claims of error. For reasons we will set forth, so do we. We will therefore reverse and remand with instructions to the trial court to issue an order to show cause and conduct an evidentiary hearing on Duchine's petition.

## BACKGROUND

### I.

### *Facts Established at Trial*

The following facts are taken from our 1989 opinion affirming Duchine's conviction.[2]

In June 1986 Duchine learned Willie Johnson, who had been imprisoned for murder, was about to be released from San Quentin. Duchine did not know Johnson, but Johnson was "an 'idol' on the streets." Some of Johnson's friends and relatives planned to hire a limousine to bring him home to Richmond on the day of his release, and Duchine contributed $20 for that purpose, in return for which he was invited to ride in the limousine. Duchine, who was younger than Johnson, asked Johnson whether he remembered him, "and Johnson replied 'Yeah, I remember you, youngster.' "

---

[2] The prosecution and the trial court relied on the appellate opinion for purposes of arguing and deciding whether Duchine established a prima facie case. Duchine's counsel stated that, "[w]ithout conceding its ultimate accuracy or veracity," "at this time" [the prima facie stage] he saw "no need to offer a different set of facts than those laid out in the appellate decisions." By relying on the appellate opinion for purposes of review of the trial court's prima facie stage denial of the petition, we do not hold that the parties may not go beyond that or any other part of the record at the evidentiary hearing.

Duchine felt honored to have ridden with Johnson and told other people about it.

On the afternoon of July 1, 1986, Johnson drove by where Duchine was standing with his friends and agreed to take Duchine to a restaurant. They bought take-out food, and Johnson dropped Duchine off where he had picked him up. Later that evening, Duchine was standing at the same corner when Johnson drove up and asked him to take a ride. Duchine agreed. Johnson drove his truck and parked around the corner from the victims' house, telling Duchine, " '[w]e're fixing to go get this money.' " Johnson pulled a shotgun and a long-barreled handgun from behind the seat of the truck and handed the handgun to Duchine. They got out of the truck, and Johnson told Duchine no one was going to be hurt. Duchine testified that he was frightened for his life when he saw the guns.

The two approached a house and apparently knocked. Angela Womble opened the door, and Duchine and Johnson pushed their way in. Angela's mother, Mrs. Womble, came into the living room and began to hit Johnson, who pushed her to the floor with the butt of his gun. Duchine demanded money from Angela, who gave him the money from her paycheck. Johnson appeared dissatisfied, and Duchine asked Angela whether she had any of her boyfriend's money. When she said she did not, Duchine began to search in various rooms while Johnson remained in the living room, standing over Mrs. Womble. Duchine testified that his search was cursory and was intended to convince Johnson he was searching, but he ignored money and valuables he noticed.

Angela testified that, when Duchine returned to the living room, she saw him and Johnson talking. She couldn't understand what they were saying but thought they agreed to leave. Johnson pointed his shotgun up and

3

fired it, first into the ceiling and then into Mrs. Womble's head. Duchine was armed with a rifle, and both he and Johnson pointed guns at Angela. She felt an impact that knocked her down and saw a muzzle flash from Johnson's gun but not from Duchine's. Duchine testified that he left the house before the shooting, heard two shots, and then ran back into the house. Johnson had fired his shotgun at Angela and then grabbed Duchine's gun and fired at her with it. Duchine testified he did not fire his gun at Angela.

The orthopedic surgeon who treated Angela for the wounds she suffered testified that her wounds were consistent with having been shot with both a rifle and a shotgun.

Johnson and Duchine left the victims' house. A couple of days later, Duchine surrendered himself to sheriff's deputies. He and Johnson were charged with murder, attempted murder, robbery and burglary. Enhancements were included for all of these charges alleging personal use of a firearm and, for all but the murder count, alleging great bodily injury. Johnson was also charged with possession of a firearm by a felon with a personal use allegation and with being a habitual criminal. The two were tried separately.

At his trial, Duchine's defense was that he was under duress and only complied with Johnson's demands because he was afraid Johnson would kill or injure him. A police officer who investigated the crimes testified that when he went to the Wombles' home on the night of the crimes, he observed currency in a toy safe, in a glass bowl on a dresser and in an envelope on the dresser. A clinical psychologist testified that he had interviewed Duchine, given him various tests and reviewed interviews of people who attended high school with Duchine. The information he gleaned showed Duchine was "a dependent personality and was easily led."

Duchine was convicted on all counts and sentenced to 12 years in prison for the attempted murder of Angela and a consecutive 27 years to life sentence for the murder of Mrs. Womble. The robbery and burglary sentences were stayed pursuant to section 654.

In the appellate opinion affirming Duchine's convictions, we noted that his duress defense, if accepted, would have been a defense to robbery and burglary and negated a necessary element of felony-murder. We stated that Duchine "was apparently convicted on a felony-murder theory," but noted that because the jury rendered a general verdict finding Duchine guilty of first degree murder, "it is unclear whether he was found guilty on a felony-murder or on an aiding-and-abetting theory. Instructions on both theories were given."

## II.

### *The S.B. 1437 Petition and Proceedings*

In 2018, the Legislature amended the murder statutes to restrict murder liability based on felony murder or natural and probable consequences theories. (Stats. 2018, ch. 1015; see 2018 Cal. Legis. Serv. ch. 1015; Couzens et al., Sentencing California Crimes ¶¶ 23:48(C), 23:49 (The Rutter Group 2020).) Under section 1170.95, a person convicted of felony murder or murder under a natural and probable consequences theory is eligible to have his murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be

5

convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

Duchine's pro per petition and declaration under section 1170.95 asserted that he was charged with and the jury was instructed on first degree premeditated murder, felony murder, murder under the natural and probable consequences doctrine, and aiding and abetting first degree murder; that he was convicted of first degree murder under the felony murder doctrine; and that he could not be convicted of first degree felony murder under the murder statutes, sections 188 and 189, as amended.  As to why he could not be convicted of first degree felony murder under the amended statutes, he asserted that he "was not the actual killer"; and he "did not, with intent to kill, aid, abet, counsel, command, induce solicit, request, or assist the actual killer in the commission of murder in the first degree."[3]

The district attorney opposed the petition, arguing the court should deny it because Duchine was guilty of aiding and abetting the murder. Although the district attorney conceded "the verdict itself does not compel the legal conclusion that the defendant aided and abetted murder," he argued that "the evidence in the case leads to the inescapable factual conclusion that the defendant is guilty of *both* felony murder and aiding and abetting

---

[3] The transcript of the initial sentencing hearing indicates that trial counsel for both parties were of the view that Duchine was not the actual killer and that the jury had based its murder conviction on the felony murder doctrine.  Also, in opposing Duchine's petition, the district attorney conceded Duchine was not the actual killer, arguing only that he was liable as an aider or abettor of Womble's murder or as a major participant in the robbery and burglary who acted with reckless indifference to human life.

6

theories of culpability." Also, Duchine's argument that he acted under duress, specifically, fear of Johnson, "impliedly conceded that he aided and abetted the murder with intent to kill." The district attorney argued, "The defendant's intent was never in question—he instead relied upon a theory that his malice was justified to save his own life."

The district attorney argued in the alternative that, even if Duchine lacked the requisite intent for aiding and abetting liability, he was not entitled to relief under section 1170.95 because the amended murder statute, specifically section 189, retains first degree liability for felony murder when the participant in certain crimes, including robbery, though not the actual killer, "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subds. (a), (e)(3).) The district attorney argued that various facts demonstrated at trial supported a finding that Duchine was a major participant in the robbery and that he acted with reckless indifference to human life.

In reply, Duchine, through appointed counsel, argued that he had made a prima facie case, a showing that "does not require proof sufficient to prevail on the ultimate issue" and "simply requires production of evidence from which a petitioner's entitlement to relief may be reasonably inferred." By arguing "that the petition should be denied at this early stage because there are other possible theories by which [Duchine] could or should be found guilty of murder," the prosecution was "conflat[ing] the prima facie stage under section 1170.95[, subdivision] (c) with the hearing stage under section 1170.95[, subdivision] (d)," Duchine argued. The prosecution's approach of evaluating the evidence in the case and denying the petition "if there was some other possible theory under which a petitioner could be

7

convicted of murder" was an attempt to "circumvent the procedures established by section 1170.95 and would have every petition denied prior to the order to show cause issuing."

The trial court declined to hold an evidentiary hearing, concluding that, while Duchine had made prima face showings that he was (i) convicted of felony murder, (ii) was charged with murder in an information allowing the prosecution to proceed on a felony murder theory and (iii) was convicted of first degree murder following a trial, he had "not made a prima facie showing that (iv) he could not be convicted of murder under the new law (§ 1170.95[, subd.] (a)(3))." The court concluded, "based on evidence of reasonable, credible and solid value, . . . that a reasonable trier of fact could reach a guilty verdict on a charge of murder under the new law." Specifically, "a reasonable trier of fact could reach a guilty verdict on a charge of murder on the basis that defendant was a major participant in the underlying felony of robbery and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2. (§ 1170.95[, subd.] (a)(3).)" As to reckless indifference, the trial court concluded, "<u>No</u> reasonable jury could fail to find that defendant acted with reckless indifference to human life in committing this robbery when—moments after Johnson shot Willie Womble in the head—defendant joined Johnson in pointing his gun at Angela Womble."

Duchine filed a timely notice of appeal.

## DISCUSSION

### I.

### *S.B. 1437 and Section 1170.95*

In *People v. Chiu* (2014) 59 Cal.4th 155, the California Supreme Court held "that natural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree

8

murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 838 (*Gentile*), quoting *Chiu*, at p. 165.) Four years later, the Legislature, finding the need for further reform of California's murder laws, enacted S.B. 1437. (*Gentile*, at pp. 838-839.)

S.B. 1437 was enacted to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' ([Stats. 2018, ch. 1015,] § 1, subd. (f).)" (*Gentile*, *supra*, 10 Cal.5th at pp. 846-847.) Thus, the Legislature sought to reform California murder law "to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Among other things, the Legislature declared that "[r]eform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (*Ibid.*, subd. (e).) A Senate Concurrent Resolution, which the Legislature referenced in its findings and declarations for S.B. 1437 as "outlin[ing] the need for the statutory changes contained in this measure" (*id.*, subd. (c)), similarly reflects that S.B. 1437 was adopted to address prison overpopulation, as well as the unfairness in prosecuting and disproportionately sentencing under felony murder and natural and probable consequences doctrines persons who did not perpetrate a homicide and lacked the mens rea and culpability of the actual killer. (Sen. Concurrent Res. No. 48, ch. 175 (2017–2018 Reg. Sess.).)

9

Indeed, the Concurrent Resolution observed that failing to "assess individual liability for nonperpetrators of the fatal act" and "imput[ing] culpability for another's bad act, thereby imposing lengthy sentences that are disproportionate to the conduct in the underlying case" can result in "cruel and unusual punishment." (*Id.*)

S.B. 1437 changed California's murder laws in three specific ways. "First, to amend the felony-murder rule, [S.B.] 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*Gentile, supra*, 10 Cal.5th at p. 842.)[4] "Second, to amend the natural and probable consequences doctrine, [S.B.] 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile, supra*, at pp. 842-843.) "Third, [S.B.] 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural

---

[4] Section 189, subdivision (f) further provides that the subdivision (e) findings are not required "when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties."

and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Id.* at p. 843.)

Section 1170.95 is the exclusive avenue by which those previously convicted of murder under now-invalid theories may obtain retroactive relief. (*Gentile, supra*, 10 Cal.5th at p. 853.) It "lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing." (See *ibid.*) Further, the relief is fully retroactive, applying not only to defendants whose convictions are not yet final but to all those convicted of murder under a natural and probable consequences or felony murder theory, no matter how long ago they were convicted, if certain conditions are met. (*Ibid.* [section 1170.95 " 'facially applies to both final and nonfinal convictions' "].)

Specifically, as we have previously explained in *People v. Anthony* (2019) 32 Cal.App.5th 1102 (*Anthony*), " 'An offender may file a petition under section 1170.95 where all three of the following conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

" 'Pursuant to section 1170.95, subdivision (c), the petition shall include, among other things, a declaration by the petitioner stating he or she

11

is eligible for relief based on all three aforementioned requirements of subdivision (a).  A trial court that receives a petition under section 1170.95 "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).)  If the petitioner has made such a showing, the trial court "shall issue an order to show cause."  (§ 1170.95, subd. (c).)

" 'The trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."  (§ 1170.95, subd. (d)(1).)  "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing.  If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner."  (§ 1170.95, subd. (d)(2).)  Significantly, if a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."  (§ 1170.95, subd. (d)(3).)' "  (*Anthony*, *supra*, 32 Cal.App.5th at pp. 1148-1149.)  Thus, the retroactive ameliorating effect of section 1170.95 is accomplished through a mechanism that does not confine the parties to the existing record.  (*Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)  "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (§ 1170.95, subd. (d)(3).)  " ' "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the

petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).)' " (*Anthony*, at pp. 1148-1149.)

II.

*The Issues Raised in This Petition*

As we have indicated, Duchine contends the trial court erred in two respects, first, by denying relief at the prima facie stage on the ground that there was substantial evidence from which a reasonable trier of fact *could* reach a guilty verdict of first degree murder and second, by engaging in judicial fact-finding at the prima facie stage rather than holding an evidentiary hearing. The People agree. We now turn to our view of these issues. Since both claims of error present issues of interpretation of section 1170.95, our review is de novo.

Since S.B. 1437 was adopted and its mechanism for retroactive application has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from resentencing decisions.[5] This includes how the trial court

---

[5] See *Gentile, supra*, 10 Cal.5th 830 [holding S.B. 1437 bars conviction for second degree murder under natural and probable consequences theory and section 1170.95 is exclusive mechanism for retroactive relief]. Currently pending in our high court are two additional cases raising questions about the resentencing process: (1) *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598, addressing whether superior courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95 and when the right to appointed counsel arises under section 1170.95, subdivision (c) and (2) *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), review granted January 13, 2021, S265309, addressing whether the People meet their burden of establishing a petitioner's ineligibility for resentencing under section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under sections 188 and 189 as amended

13

should evaluate the record evidence at the prima facie stage and what the nature of the petitioner's prima facie burden is under section 1170.95, subdivision (a)(3) to show "he could not be convicted of first or second degree murder because of changes to" the murder statutes made by S.B. 1437.[6]  As will be seen, these issues are intertwined.  Although the parties to this case are in agreement on these issues, our colleagues in other appellate districts are not.

In *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), on which the parties here rely, the Sixth District held that at the prima facie stage of a resentencing petition the trial court should not decide unresolved factual issues[7] that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing.  (See *id*. at pp. 980, 981-982.)  According to *Drayton*, the trial court's authority to make factual determinations at the

---

by S.B. 1437 (Stats. 2018, ch. 1015), or must prove every element of liability for murder under the amended statutes beyond a reasonable doubt.

[6]  There is no question that Duchine made a prima facie showing of the two other elements of the petitioner's requisite showing, that "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" and "(2) The petitioner was convicted of first degree or second degree murder following a trial . . . at which the petitioner could be convicted for first degree or second degree murder."  (§ 1170.95, subd. (a).)  The prosecutor conceded he did, and the trial court agreed.

[7]  The underlying conviction was based on a guilty plea (*Drayton*, *supra*, 47 Cal.App.5th at p. 969), and the trial court relied on evidence presented at the preliminary hearing, a probation report, minute orders and sentencing hearings in finding the defendant was a major participant in a burglary and robbery and acted with reckless indifference to human life.  (*Id*. at pp. 970-972.)

14

prima facie stage "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Id*. at p. 980.)

Implicit in Duchine's and the Attorney General's embrace of *Drayton* is their rejection of *People v. Garcia* (2020) 57 Cal.App.5th 100 (*Garcia*), which rejected the limitations *Drayton* imposed on the trial court's prima facie ruling. Division 6 of the Second District affirmed a trial court's denial of resentencing at the prima facie stage. In doing so, it disagreed with the holding of *Drayton* that the trial court " 'should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law.' " (*Garcia*, at p. 116; see also *id*. at p. 118.)

*Garcia* also interpreted section 1170.95's eligibility requirement in subdivision (a)(3) that the petitioner make a prima facie showing he or she "could not be convicted of first or second degree murder because of changes" wrought by S.B. 1437 as importing a "sustantial evidence standard" and as requiring a court to deny a petition if it concludes substantial evidence exists in the record on which a jury could have based a murder conviction on a valid theory had it been instructed on that theory. (*Garcia, supra*, 57 Cal.App.5th at pp. 116-118.) Because certain facts in Garcia's record of conviction were sufficient to support a hypothetical jury finding that he had the intent to kill and was an aider and abettor of the killer,[8] the court held that he had failed

---

[8] The jury at Garcia's trial had not been instructed on an aiding and abetting theory and had "necessarily convicted appellant of murder under the natural and probable consequences theory." (*Garcia, supra,* 57 Cal.App.5th at pp. 214-215.)

15

to make a prima facie showing.  (*Id*. at pp. 116-118.)  The *Garcia* court relied on *Duke supra*, 55 Cal.App.5th 113, review granted as stated in footnote 5, in adopting what it called a "substantial evidence" standard to describe the nature of the petitioner's prima facie burden.  (*Garcia*, at pp. 115-116.)  In *Duke*, the court had considered the nature of the prosecution's burden at the evidentiary hearing phase, and held that to carry its burden "the prosecution must . . . prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder." (*Garcia*, at p. 116, quoting *Duke*, *supra*, 55 Cal.App.5th at p. 123.)

*Drayton* ascribes a meaning to the third element of section 1170.95, subdivision (a) different from that espoused in *Garcia*.  If a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories,  unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden.  (*Drayton, supra*, 47 Cal.App.5th at p. 980.)  In that circumstance, the trial court should take him at his word and not engage in factfinding on the issues "without first issuing an order to show cause and allowing the parties to present evidence at a hearing." (*Id*. at pp. 981-982 [where petitioner denied he was a major participant in the felony or acted with reckless indifference to human life and record did not conclusively refute these assertions, trial court should not have decided these factual issues without issuing order to show cause and allowing parties to present evidence at hearing].)  Implicit in *Drayton*'s holding is that the third element of section 1170.95, subdivision (a) does not require an absence of sufficient

16

evidence, *on the record of conviction*, to support a hypothetical finding that the defendant is guilty of murder under a currently valid theory.[9]

In view of the ameliorative purposes of S.B. 1437, the Legislature's stated concerns about proportionality, fairness and excessive punishment, and its adoption of a trial court proceeding at which new evidence may be submitted and a criminal trial burden of proof beyond a reasonable doubt is applied, we cannot agree with cases like *Garcia* that interpret section 1170.95 to allow the trial court at the prima facie stage to resolve disputed facts or to answer only the question whether the existing record precludes a conviction on a murder theory that was never tried. By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner.

The standard adopted by *Garcia*, in which the trial court focuses on the state of the existing record and applies an appellate review substantial evidence standard, makes little sense in this context. If it had intended the process to be substantial evidence review of the existing record, the Legislature could simply have provided an appellate remedy, such as direct

---

[9] *Drayton* addressed another issue, which is whether there are two different prima facie phases with different showings and determinations, the initial phase after the defendant files his petition and the second after counsel has been appointed and briefing has occurred. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 974-977.) We do not address that question because the trial judge here appointed counsel and ordered briefing, and the only question here is whether its post-briefing decision rejection of Duchine's petition was correct.

appeal for nonfinal convictions and habeas corpus for final convictions.[10] This is not what it did. Instead, the Legislature imposed the burden of proof on the prosecution, at the resentencing hearing. The interpretation adopted by *Garcia* would mean the prosecution's burden would be to prove "beyond a reasonable doubt" that "substantial evidence" exists, which by itself borders on incomprehensible. The court would then employ these two widely divergent standards in a combined (and backwards) fashion to determine, as *Garcia* suggests, whether a jury *hypothetically could have found* a defendant guilty under a permissible theory had it addressed the issue. In short, the idea that the prosecution must prove beyond a reasonable doubt that there is substantial evidence in a prior record to support a hypothetical finding of guilt on a theory of murder that may never have been presented to a jury is beyond that border.

Also, we agree with the analysis of Justice Perluss of the Second District, who recently addressed the meaning of "could not be convicted" of murder under section 1170.95, subdivision (a)(3), albeit from the perspective of the prosecution's burden at the evidentiary hearing under section 1170.95, subdivision (d). (*People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*).) He and the panel rejected the "appellate review standard, which asks whether a reasonable jury could find the petitioner could be convicted of murder under a still-valid theory" (*id.* at p. 240) and instead concluded "section 1170.95 requires the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law to establish

---

[10] We note, however, that "[w]hen a trial court instructs the jury on alternative theories of guilt and at least one of those theories is legally erroneous at the time it was given, we normally assess whether the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24." (*Gentile, supra,* 10 Cal.5th at p. 851.)

a petitioner's ineligibility for relief under that statute." (*Id.* at pp. 230-231.) Looking to the purposes of S.B. 1437 to guide its interpretation of the statute, the *Rodriguez* court identified the Legislature's expressed concern about "the disparity between individual culpability and punishment then existing under the natural and probable consequences doctrine and the felony murder rule" and its desire to "reform[] aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae." (*Rodriguez*, at p. 240.) "That legislative goal," the court reasoned, "is best effectuated by resentencing individuals convicted of first or second degree murder under the natural and probable consequences doctrine or the felony murder rule if the evidence, whether from the record of conviction alone or with new and additional evidence introduced at the subdivision (d)(3) hearing, fails to establish beyond a reasonable doubt they, in fact, acted during the crime with the now-required mental state. To deny resentencing simply because a jury could have found that they may have acted with express malice would frustrate the legislation's purpose." (*Id.* at pp. 240-241.) Moreover, considering that section 1170.95, subdivision (d)(3) imposes the reasonable doubt standard on the prosecutor, which is "the standard of proof considered by the independent factfinder in a criminal trial," the *Rodriguez* court opined, "It is unlikely the Legislature would have selected [that standard] if it had intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes." (*Rodriguez*, at p. 242.)

*Rodriguez* does not specifically address the petitioner's burden at the prima facie stage. But the petitioner's required showing at the prima facie

19

stage and the prosecution's burden at the evidentiary hearing are the opposite sides of the same coin. Since we agree with Justice Perluss that section 1170.95, subdivision (d) requires the prosecutor to prove beyond a reasonable doubt that the defendant "in fact, acted during the crime with the now-required mental state," not merely that "a jury could [hypothetically] have found that [he] may have acted with express malice" (*Rodriguez, supra*, 58 Cal.App.5th at p. 241), we hold that the prima facie showing the defendant must make is that he did not, in fact, act or harbor the mental state required, for a murder conviction under current law.

Relatedly, and for similar reasons, we hold that the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question his evidence. The court may, as the Sixth District said in *Drayton*, consider the record of conviction at the prima facie stage, but may not evaluate the evidence, make credibility findings adverse to the petitioner, engage in factfinding or exercise discretion. (*Drayton, supra*, 47 Cal.App.5th at pp. 981-982.) The record should be consulted at the prima facie stage only to determine "readily ascertainable facts," such as the crime of conviction and findings on enhancements. Once the petitioner has made a prima facie showing, true factfinding should be reserved and exercised only after an order to show cause is issued and the parties are permitted to supplement the record with new evidence, including, if requested, through an evidentiary hearing. (*Id.* at pp. 980-981.)

## III.

### *The Trial Court Erred.*

The trial court erred in this case in both of the ways the Attorney General and Duchine contend it did. It engaged in judicial fact-finding on issues not conclusively resolved by the record of conviction at the prima facie stage of the petition proceedings. That was the first error. The second was that it answered the wrong question, deciding that Duchine could theoretically have been found guilty under the major-participant-acting-with-reckless-indifference theory of felony murder that remains valid under S.B. 1437. It did so even though Duchine was not charged with, and the jury did not address, the special felony murder circumstance that entails proof of those two elements, and the record of conviction did not establish those elements as a matter of law. (See §§ 189, subd. (e)(3), 190.2, subd. (d).) The major participant and reckless indifference findings the trial court made based solely on the record evidence entail the weighing of evidence, drawing of inferences, and assessment of credibility that should be left to the factfinding hearing process contemplated by section 1170.95, subdivision (d). (*Drayton*, *supra*, 47 Cal.App.5th at p. 982.) Duchine was entitled to a hearing at which the prosecutor would bear the burden to prove beyond a reasonable doubt, based on the record of conviction and any additional evidence the parties submitted, that he was guilty of murder under a theory still valid under California law.

### DISPOSITION

For the foregoing reasons, we reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under section 1170.95, subdivision (c) and hold a hearing pursuant to

21

section 1170.95, subdivision (d) to determine whether to vacate Duchine's murder conviction and recall his sentence and resentence him.

_____
STEWART, J.

We concur.

_____
KLINE, P.J.

_____
RICHMAN, J.

*People v. Duchine* (A157980)

23

Trial Court: Contra Costa County Superior Court

Trial Judge:        Hon. John W. Kennedy

Counsel:

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and Amit Kurlekar, Deputy Attorneys General, for Plaintiff and Respondent.